In re Mark A. MINTZ, Respondent, A
Member of the Bar of the District
of Columbia Court of Appeals.

No. 92–SP–222.

District of Columbia Court of Appeals.

Submitted May 19, 1993.
Decided June 24, 1993.

Mark A. Mintz, New York City, did not file an appearance.

Leonard H. Becker, Bar Counsel, and Michael S. Frisch, Asst. Bar Counsel, Washington, DC, were on the Statement of Bar Counsel, for petitioner.

Before ROGERS, Chief Judge, and FERREN and SULLIVAN, Associate Judges.

PER CURIAM:

Respondent Mark A. Mintz is a member of the Bars of both New Jersey and the District of Columbia. Effective February 2, 1992, and until further court order, the Supreme Court of New Jersey suspended respondent for two years for grossly neglecting his clients' matters, exhibiting a pattern of neglect, lacking due diligence, failing to communicate with clients, failing to cooperate with ethics authorities, and failing to maintain a *bona fide* office in New Jersey, in violation of New Jersey Rules of Professional Conduct 1.1(a), 1.1(b), 1.3, 1.4, 8.1(b), and New Jersey Rules of General Application 1:21–1(a).[1] *In re Mintz*, 126 N.J. 484, 600 A.2d 143 (1992). The New Jersey Supreme Court further ordered, as a condition of reinstatement,

---

1. According to the report the New Jersey Disciplinary Review Board filed with the New Jersey Supreme Court, respondent's misconduct involved four clients. In one case, the client retained respondent to file a personal injury suit against the client's landlord for failure to provide adequate security, where the client had sustained severe physical injuries during a burglary of his apartment. For a period of a year, respondent failed to answer the client's calls and letters. Furthermore, there was no evidence that respondent ever filed suit. A second client retained respondent to represent him in a claim for injuries sustained in an automobile accident. Respondent did nothing to advance the client's interests for almost a year and consistently ignored the client's attempts to contact him. Respondent personally sought out the third client, who had been injured in a fall in a supermarket, and induced her to drop her current lawyer and hire respondent instead. Thereafter, however, respondent failed to investigate her case and did not answer her calls and letters. The fourth client was a store owner who had lost his equipment and furnishings in an apparent eviction. Respondent promised to file suit to recover these items, but he never did so, nor did he return the client's phone calls.

that respondent practice under the supervision of a proctor for two years. *Id.*

Based upon the New Jersey disciplinary proceedings against respondent, and pending final disposition of the instant proceeding, this court suspended respondent from the practice of law in the District of Columbia by order dated March 12, 1992. *See* D.C.Bar R. XI § 11(d). We also directed the Board on Professional Responsibility to recommend whether reciprocal discipline should be imposed. *See* D.C.Bar R. XI § 11(e).

■ Upon consideration of a statement filed by Bar Counsel[2] and of the record of the New Jersey proceedings against respondent, the Board concluded that there was no violation of due process or infirmity of proof in the New Jersey proceedings and that the misconduct established in those proceedings would have constituted a violation of the Code of Professional Responsibility that was in effect in the District of Columbia at the time of respondent's acts.[3] The Board further concluded that a two-year suspension, conditioning reinstatement on a showing of fitness,[4] is within the range of sanctions that would be imposed in this jurisdiction for such a significant pattern of misconduct. Accordingly, the Board has now recommended that respondent be suspended from the practice of law in the District of Columbia for two years and that, as a condition of his reinstatement, respondent be required to prove his fitness to practice. The Board also decided, however, that it would be inappropriate to follow the New Jersey Supreme Court in requiring respondent's supervision for an additional two years, because that is not the kind of sanction our court has ordered in similar cases. *See* D.C.Bar.R. XI § 11(c)(4) (reciprocal discipline need not be imposed if misconduct warrants substantially different discipline in the District of Columbia).

We traditionally defer to the Board's recommendations. *See In re Garner,* 576 A.2d 1356, 1357 (D.C.1990); D.C.Bar R. XI § 9(g) ("the Court ... shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted"). In this case, we adopt the Board's recommendations in virtually all respects.

■ We agree with the Board that a two-year suspension, with reinstatement conditioned upon a showing of fitness, is "within the range of sanctions," *Garner,* 576 A.2d at 1357, that we have previously ordered for similar cases of gross and persistent negligence of client matters. *See In re Delate,* 598 A.2d 154 (D.C.1991) (ordering two-year suspension, with reinstatement conditional on showing of fitness, for conduct prejudicial to the administration of justice, neglect of client matters, intentional failure to seek client's lawful objectives, failure to maintain complete records, and failure to deliver client funds promptly); *In re Alexander,* 496 A.2d 244 (D.C.1985) (ordering two-year suspension for pattern of failure to seek client's lawful objectives and conduct prejudicial to the administration of justice); *In re Sheehy,* 454 A.2d 1360 (D.C.1983) (ordering two-year suspension for neglect of client's legal matter and misrepresentation to client and Bar Counsel). We also agree with the Board's conclusion that a subsequent period of supervised practice would be inappropriate in

---

2. Respondent did not file an answer to the statement of Bar Counsel in proceedings before the Board, nor did he appear before this court.

3. The present Rules of Professional Conduct did not take effect in the District of Columbia until January 1, 1991. *See* Preface to Rules of Professional Conduct, D.C.Bar R. app. A. However, with the sole exception of Rule 1:21–1(a) (failure to maintain a *bona fide* office), all of the New Jersey rules that respondent violated are analogous to provisions in our previous Code of Professional Responsibility.

4. Bar Counsel believed that the New Jersey order did not require a showing of fitness as a condition of reinstatement. The Board disagreed, concluding that the New Jersey order, which was to be "effective February 2, 1992, and *until the further Order of the Court,*" *Mintz,* 600 A.2d at 143 (emphasis added), required a showing of fitness as a condition to reinstatement. We agree with the Board's interpretation. *See In re Youmans,* 588 A.2d 718, 719 n. 3 (D.C. 1991) (citing N.J.Supreme Court Rule 1:20–11(h)).

this case, as we did not require such supervision in the comparable cases of *Delate, Alexander*, or *Sheehy*.

■ Our order differs from the Board's recommendation only insofar as we impose respondent's suspension prospectively. The Board had proposed that the sanction be ordered *nunc pro tunc* from the date of respondent's temporary suspension. After the Board had issued its recommendation, however, Bar Counsel informed this court that respondent had failed to file an affidavit of compliance with D.C.Bar R. XI § 14, as required by § 14(f) of that rule. In cases such as this, where an attorney has failed to carry out his or her responsibilities under this rule, we have imposed disciplinary sanctions prospectively, rather than retroactively. *See In re Mulkeen*, 606 A.2d 136, 139 (D.C.1992).

Accordingly, it is ORDERED that respondent shall be, and hereby is, suspended from the practice of law in the District of Columbia for a period of two years from the date hereof, with reinstatement conditional upon a showing of rehabilitation in accord with the provisions of D.C.Bar R. XI §§ 3(a)(2) & 16. *See In re Roundtree*, 503 A.2d 1215, 1217 (D.C.1985).

FERREN, Associate Judge, concurring:

I join the court's opinion but write separately to place this decision in its broader context.

Our caselaw development as to supervised probation in reciprocal discipline cases has not been entirely consistent. In at least one reciprocal discipline case, this court imposed the discipline ordered by the other jurisdiction, including supervision by a "probation monitor" for four years after completion of a one-year suspension. *See In re Chadwick*, 585 A.2d 798, *modified*, 591 A.2d 837 (D.C.1991). The monitoring, however, was limited to that conducted in California, where the respondent had his practice. *See id.*, 585 A.2d at 801.

In contrast, in another reciprocal discipline case where Florida had imposed both a ninety-one day suspension and a two-year probation period for charging clearly excessive attorney's fees, this court ordered the same suspension but did not, in addition, require the two-year probation as reciprocal discipline in the District of Columbia. *See In re Richardson*, 602 A.2d 179 (D.C. 1992). The Board had taken the view that probation would be inappropriate because there was no evidence that the attorney had a practice or health-related problem that called for monitoring. *See id.* at 186.

I agree that, given our required deference to the recommendation of the Board on Professional Responsibility, *see ante* at 927–928, this is not a case in which supervised probation should be required in addition to suspension and reinstatement upon a showing of fitness. Because we regularly do require supervised probation in certain kinds of cases, however, I believe it is important to show that the present case does not fall within the scope of those cases where we commonly have done so.

Typically, this court has ordered a period of supervised probation only in cases where the attorney's prior misconduct has been "attributable to extraordinary circumstances, such as a physical, mental, or emotional crisis or illness which had abated since the time of the violation." *In re Tinsley*, 582 A.2d 1192, 1195 (D.C.1990).[1] *Compare In re Larsen*, 589 A.2d 400 (D.C. 1991) (staying execution of disbarment and ordering three years of supervised probation, where misconduct was attributable to manic depressive disorder) *and In re Peek*, 565 A.2d 627 (D.C.1989) (ordering four-month suspension, with execution of last two months stayed on condition of attorney's compliance with conditions of two years of supervised probation, where misconduct was attributable to chronic depression) *and In re Reid*, 540 A.2d 754 (D.C. 1988) (staying execution of disbarment and ordering supervised probation, where misconduct was attributable to alcoholism)

---

1. The Board on Professional Responsibility has announced three additional criteria for supervised probation: "(1) that the offense not be of a serious nature, (2) that the attorney not have a substantial record of prior discipline, [and] (3) that the attorney demonstrate a repentant attitude." *Tinsley*, 582 A.2d at 1195.

*and In re Kersey,* 520 A.2d 321 (D.C.1987) (same) *with Tinsley,* 582 A.2d at 1195–96 (refusing to order supervised probation as alternative discipline, absent evidence that attorney met illness and other Board criteria). In the present case, there is no direct evidence of health or behavior problems that would be ameliorated by a period of supervised practice.

I support the policy of the Board and this court justifying supervised probation—including requirements to report regularly to sobriety monitors, to practice monitors, and to financial monitors—for attorneys who have committed disciplinary violations and are recovering from addictions and other illnesses that have substantially contributed to their infractions. *See, e.g., Peek,* 565 A.2d at 634 (chronic depression); *Kersey,* 520 A.2d at 328 (alcoholism). Moreover, it seems to me that some of these probationary requirements would also be desirable in certain cases in which attorneys do *not* suffer from addictions or other illnesses. I have reviewed cases from time to time in which attorneys have committed infractions of a kind indicating (at least to me) a need not only for a showing of rehabilitation and fitness pursuant to *In re Roundtree,* 503 A.2d 1215, 1217 (D.C.1985), but also for a period of supervision by financial and/or practice monitors before these attorneys are allowed to have, once again, an unfettered right to represent clients. D.C.Bar R. XI § 3(a)(7) (probation) is clearly broad enough to permit such an expanded probation system.

I can understand the practical problem of a lack of resources for monitoring, but that is a problem that the District of Columbia Bar, with its strong tradition of volunteerism in the public interest, could easily help solve. As for probation-monitoring in reciprocal discipline cases when a lawyer practices primarily in another jurisdiction, I believe there is much to be said—consistent with the theory underlying reciprocal discipline—for deferring to the judgment of disciplinary authorities in that other jurisdiction and thus for ordering conforming probation as a condition of reinstatement, to be monitored by the disciplinary authorities there. *See Chadwick.* In that way, a probation violation elsewhere, resulting in an immediate suspension, could serve as a basis for more easily reimposing a corresponding sanction here, in the public interest. As indicated above, however, I am satisfied with the Board's recommendation that no probation in addition to the suspension and other requirements for reinstatement should be imposed here.